# Cynthia R. Chilkott v. Robert B. Chilkott

[607 A.2d 883]

No. 90-346

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 20, 1992

*Catherine E. Clark* and *Gregory Jeffers,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellee.

*Richard W. Affolter* of *Sheehey Brue Gray & Furlong,* Burlington, for Defendant-Appellant.

**Morse, J.** Defendant husband appeals the property award in this divorce. His principal claim is that the trial court's valuation of a trust was erroneous because the trust was not subject to the jurisdiction of the court within the meaning of 15 V.S.A.

§ 751 (equitable distribution of marital property). He also argues that, even if the trust was properly taken into account in distributing the marital assets, the trial court erred in accepting an expert's opinion as to its value. Finally, husband contends that the uneven distribution of the property was unfair and unreasonable. Because we conclude that the trust was marital property and the trial court did not abuse its discretion in evaluating it and making its overall property distribution, we affirm.

Husband was one of the beneficiaries of an inter vivos trust which his father created. The trust became irrevocable when his father died. Securities funded the trust, and at the time of the final hearing were valued at $220,000. The death of father entitled husband's mother to all the trust income for her life. The trustee had power to invade the principal for the mother's health, maintenance and welfare, but had not done so. Mother, eighty-seven-years-old, was alive at the time of trial.

When mother dies, husband, if he is alive, will receive the income from the trust and an unrestricted right to invade the principal. At husband's death, plaintiff wife would receive the income for life. Upon the death of all income beneficiaries, the remainder, if any, will be paid to the donor's grandchildren, or if they are deceased, to their issue by right of representation, free of the trust.

At trial, wife called an actuarial expert, who testified that husband's present interest in the trust was valued at $128,034. Husband did not offer any evidence contradicting this testimony other than cross-examination, and the court adopted this figure in its findings of fact.

Husband received a property distribution worth approximately $197,000, including his interest in the trust, his business, pension, stocks, an automobile, and a snowmobile. Wife was awarded marital property valued at approximately $220,000, including the marital residence, her one-half interest in real estate located in New Hampshire, the homestead furnishings, and personal property associated with her ceramics business.

Husband and wife were married for approximately 33 years and raised four children. At the time of the divorce, husband was living, rent free, with his mother, from whom he also re-

ceived money for expenses. A college graduate, husband was the primary wage earner during the marriage. The court found that husband's net income after the divorce would be $1,700 per month. Wife, also a college graduate, was currently working in a nursing home. She had worked as a medical secretary in 1958, and then in a school lunch program. Aside from the ceramics business, which had no net earnings during its five years of operation, wife had no other employment skills. Wife's earned net income was $978 per month, and she was awarded $357 a month in maintenance.

Both parties drank excessively until 1981, when wife addressed her drinking habit. She has abstained from alcohol since 1983. Denying that he had a drinking problem, husband continued to drink, despite the advice of physicians and his then-living father.

## I.

 Husband initially claims that the trial court abused its discretion by including in the property distribution his interest in the trust, because it was an asset not "owned" by him within the meaning of 15 V.S.A. § 751. We conclude that husband's interest in the trust was marital property subject to distribution under § 751(a).

Under 15 V.S.A. § 751(a), "[a]ll property owned by either or both of the parties, however and whenever acquired" is subject to the court's jurisdiction. See also *Lynch v. Lynch*, 147 Vt. 574, 576, 522 A.2d 234, 235 (1987) (any form of ownership by either spouse makes property subject to the jurisdiction of the court). Although the trust represents to the parties a future, contingent interest, the trust is a form of property subject to ownership.* See *Guild v. Prentis*, 83 Vt. 212, 214, 74 A. 1115, 1116

---

\* A review of opinions from other states on this question reveals there is no unanimity as to whether trial courts should consider or divide future interests in trusts in making a property division. *Lauricella v. Lauricella*, 409 Mass. 211, 214–15, 565 N.E.2d 436, 438 (1991) ("no clear consensus" among states on the propriety of considering or dividing trusts in property distributions). See Annot., *Divorce Property Distribution: Treatment and Method of Valuation of Future Interest in Real Estate or Trust Property Not Realized During Marriage*, 62 A.L.R.4th 107 (1988); Note, *The Trust*

(1910) (ownership may be of fee or a lesser estate); Restatement of Property § 10 (1936) (owner is a person with an interest in property); G. Bogert, Trusts § 37, at 133 (6th ed. 1987). Our conclusion derives from the principle, adopted by states with property division statutes resembling ours, that property ownership ought not "to be determined by the wooden application of technical rules of the law of property." *Davidson v. Davidson*, 19 Mass. App. 364, 371, 474 N.E.2d 1137, 1144 (1985).

In Vermont, § 751(a) has been applied to property interests with characteristics similar to those at issue here. In *Osborn v. Osborn*, 147 Vt. 432, 434, 519 A.2d 1161, 1163 (1986), we held that a share of an undistributed estate was marital property subject to § 751(a) even though it was not known whether it had any value and even though it could not be distributed to the other spouse. The inability to distribute the estate was not an impediment because creative alternatives were available to effect an equitable distribution of the property. *Id.*; see also *Hendrick v. Hendrick*, 142 Vt. 357, 361, 454 A.2d 1251, 1253 (1982) (describing alternatives when a specific property cannot be distributed). In *McDermott v. McDermott*, 150 Vt. 258, 259–60, 552 A.2d 786, 787–88 (1988), § 751(a) was applied to a pension. Although the pension in *McDermott* had vested, but not matured, vesting was not critical to the outcome. Most courts follow the rule that vesting is not necessary for a pension to be considered marital property. See L. Golden, Equitable Distribution of Property § 6.13, at 171 n.130 (1983).

## II.

■ The real issue here is not whether husband's trust interest is marital property but instead whether the future interest is so remote that it has no ascertainable present value or whether its value, in the words of the *McDermott* Court, "can be assessed without excessive speculation." *McDermott*, 150 Vt. at 260, 552 A.2d at 788; see Note, *The Trust in Marital Law: Divisibility of a Beneficiary Spouse's Interests on Di-*

---

in Marital Law: Divisibility of a Beneficiary Spouse's Interests on Divorce, 64 Tex. L. Rev. 1301 (1986). Because characteristics of trusts differ so greatly, case law turns "on the attributes of the respective disputed interests," *Lauricella*, 409 Mass. at 215–16, 565 N.E.2d at 439, and construction of the enabling statute.

*vorce*, 64 Tex. L. Rev. 1301, 1354 (1986). This was not a situation where the trust was ambulatory, making husband's interest a "bare hope of succession to the property of another." *Rubin v. Rubin*, 204 Conn. 224, 229, 527 A.2d 1184, 1187 (1987). Husband's father was dead at the time of the property division, making the trust irrevocable. Therefore, husband's remainder interest in the trust was fixed and no longer inchoate. See *Davidson*, 19 Mass. App. at 372, 474 N.E.2d at 1144 (death of donor "fixed" remainderman's interest, even though it was subject to a condition of survivorship). The trust would become worthless only if the trustee exhausted the principal for the mother's care. Husband's mother, the life tenant, was eighty-seven-years-old at the time of trial and had never drawn on the corpus of the trust. Wife's expert witness made assumptions in valuing husband's interest in a reasonable way in light of these facts and general economic and life expectancy factors.

The difficulties in valuing husband's interest in the trust are similar to those encountered in valuing a pension because the value of the pension is contingent on the worker reaching retirement. Once we accept the pension contingency, the contingencies in the instant case do not defeat the applicability of § 751(a). Wife's actuarial expert testified that the same principles apply to valuing trusts as to valuing pensions. We have held that the use of such an expert is a proper method to determine the value of a pension in evaluating a spouse's opportunity for the future acquisition of capital assets and income. *Victor v. Victor*, 142 Vt. 126, 129, 453 A.2d 1115, 1117 (1982). The expert took into account the age, situation and past conduct of husband's mother with respect to the trust. She also analyzed the situations of the parties using annuity mortality tables. Husband's cross-examination may have served to weaken the weight of the expert's opinion, but it did not completely eliminate its probative value.

The court's acceptance of the expert's estimate of husband's financial interest in the trust was not clearly erroneous. V.R.C.P. 52(a)(2). The actuary, qualified as an expert in the field, served to "assist the trier of fact to understand the evidence." V.R.E. 702. Certainly, the court could have attributed some value to husband's expectancy interest, and the actuary's opinion gave the court guidance in valuing it. In short, the ex-

pert advice improved the reliability of the fact-finding on the value of husband's interest in the trust.

■ Finally, we note that the court perceptively required an "immediate offset method" of distribution rather than a "deferred distribution or reserved jurisdiction method" (distribute share of trust when no longer contingent), because of the finality fostered in dealing with the asset today, thereby avoiding "further entanglement of the parties and problems with continuing supervision by the court." *McDermott*, 150 Vt. at 260–61, 552 A.2d at 788.

## III.

Husband's last contention is that even if consideration of the present value of the trust to husband was proper, the distribution was so unfair and uneven as to amount to an abuse of discretion.

■■ Trial courts have broad discretion in distributing marital property. See, e.g., *Scott v. Scott*, 155 Vt. 465, 471–72, 586 A.2d 1140, 1144 (1990) (trial court's distribution of marital property will not be disturbed on appeal unless discretion was abused, withheld or exercised on untenable grounds). Here, the court's consideration of husband's opportunity to receive future income from the trust and the wife's relatively lower earning capacity supported any inequality in the distribution of the marital assets. Moreover, the court's assessment of the respective merits of the parties also supports an uneven distribution. 15 V.S.A. § 751(b)(12); see *Daitchman v. Daitchman*, 145 Vt. 145, 151–52, 483 A.2d 270, 273–74 (1984) (property distribution statute calls court's attention to parties' conduct during coverture). The trial court found that husband's drinking problem caused in significant part the breakdown of the marriage.

*Affirmed.*

**Allen, C.J.,** dissenting. I dissent because the property distribution is based upon assumptions and speculations which may or may not come to pass. While the trial court and this Court believe that the wife has been awarded marital property valued at $220,000 and the husband has been awarded $197,000, the husband did not receive and may never receive $128,000 of that

award. In order for the husband to receive this sum it must be assumed that the trustee will not invade for the benefit of the mother, that the son will survive his mother and that the son will then exercise his right to invade.

We have previously recognized two methods of distribution for uncertain interests in property during divorce proceedings. When such property can be actuarially valued, it may be distributed immediately through the offset method. Alternatively, the court can retain jurisdiction and distribute the property as it becomes available to one of the parties. See *McDermott v. McDermott*, 150 Vt. 258, 261, 552 A.2d 786, 788–89 (1988) (discussing the two methods of distribution in the context of a pension plan). The latter approach allows the court to base the property distribution on actual figures rather than assumptions. *Id.* at 261, 552 A.2d at 789. A third approach is to make an award to a spouse of a noninterest-bearing judgment for a percentage of the trust when it becomes available to the other spouse. See *In re Marriage of Bentson*, 61 Or. App. 282, 283, 656 P.2d 395, 397 (1983). This avoids the need for retained jurisdiction and preserves the advantages associated with distributions based on actual figures rather than speculation.

Here, the actuary assumed that the principal would stay intact until the death of the husband's mother and did not take into account the possibility that it might be substantially depleted by invasion to care for the mother's final years. The trustee had the express power to invade the corpus as was "reasonable and necessary" for the mother's "comfortable, support, maintenance, benefit and welfare." I question whether the husband's interest is even susceptible of actuarial valuation given the broad power of invasion. *Davidson v. Davidson*, 19 Mass. App. 364, 371, 474 N.E.2d 1137, 1143–44 (1985) (value of remainder interest is uncertain and actuarial calculations are of no avail where trustees could invade "in their uncontrolled discretion").

While the assumptions upon which the court bases its property division could conceivably occur, it is equally plausible that the husband will receive little or nothing from the trust or that the wife will receive all of the income therefrom during her life.

A fairer approach would be to divide the benefits from the trust on an "if, as, and when they are received" basis, and to make an equitable assignment of the assets that are in possession and readily susceptible of division.